IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

IN THE MATTER OF )
THE HEARTLAND INSTITUTE, et. al )
)
) No. 11 C 2240
Motion to Quash Subpoena )
)
)

**MEMORANDUM OPINION**

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on The Heartland Institute's (Heartland) and Joseph Bast's (Bast)(collectively referred to as "Third Parties") motion to quash subpoena and notice of deposition. For the reasons stated below, we grant Third Parties motion to quash.

**BACKGROUND**

An action is pending in the District Court for the Southern District of Illinois (Civil Action Number 10-188-JPG). Plaintiffs in that underlying action (Plaintiffs) are public water suppliers and defendants are Syngenta Crop Protection, LLC f/n/a Syngenta Crop Protection, Inc. and Syngenta AG (collectively referred to as "Syngenta"). Plaintiffs have issued subpoenas to Third Parties in this district relating to that underlying action. Third Parties have filed a motion to quash the subpoenas.

1

At the outset, this court's ruling on Third Parties' motion to quash is based solely upon the evidence and arguments submitted to this court. In ruling on Third Parties' motion to quash, this court expresses no opinion as to the merits of the underlying litigation between Plaintiffs and Syngenta, or as to the management of that case, which is solely within the jurisdiction of the United States District Court for the Southern District of Illinois.

**LEGAL STANDARD**

Pursuant to Federal Rule of Civil Procedure 30(a), a "party has a general right to compel any person to appear at a deposition, through issuance of a subpoena if necessary." *CSC Holdings, Inc. v. Redisi*, 309 F.3d 988, 993 (7th Cir. 2002). A party can also subpoena a third party to produce materials pursuant to Federal Rule of Civil Procedure 45 (Rule 45). Rule 45 provides, in relevant part, the following:

> *Quashing or Modifying a Subpoena.*
> (A) *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:
>
> (I) fails to allow a reasonable time to comply;
>
> (ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person--except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;
>
> (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
>
> (iv) subjects a person to undue burden.

Fed. R. Civ. P. 45. Thus, a court must "quash or modify a subpoena if it [requests

2

privileged information,] fails to allow a reasonable time for compliance or subjects the deponent to an undue burden." *CSC Holdings*, 309 F.3d at 993 (citing Fed. R. Civ. P. 45). In deciding whether to grant a motion to quash, a court "must evaluate such factors as timeliness, good cause, utility, and materiality." *Id.* (citation omitted).

## **DISCUSSION**

Plaintiffs have issued subpoenas to Third Parties requesting five categories of information: (1) documents or information exchanged between Heartland and Syngenta regarding atrazine, (2) documents or information regarding atrazine, (3) documents or information regarding Syngenta, (4) documents or information regarding anything of value received by Heartland from Syngenta, and (5) documents or information regarding the Triazine Network, the Kansas Corn Growers Association, the Kansas Grain Sorghum Producers Association, or Crop Life America. In addition, Plaintiffs have subpoenaed Bast to appear for a deposition to testify and bring with him the same documents or information requested in the subpoena for documents directed to Heartland. Plaintiffs have indicated that they have "made numerous attempts to obtain the information that Plaintiffs are now seeking from [T]hird [P]arties via subpoenas." (Opp. Ex. A Par. 8). More specifically, Plaintiffs state that "[o]n November 1, 2010, Plaintiffs served [Syngenta] with interrogatories and requests for production," and Syngenta "has not responded to Plaintiffs' discovery requests pertaining to the information requested in

3

the subpoenas." (Opp. Ex. A Par. 9).

Third Parties have objected to producing the requested information and to the notice of deposition and have filed the instant motion to quash. In their motion to quash, Third Parties have argued that both the subpoena for documents and the notice of deposition should be quashed because they are overly broad, seek irrelevant information, and seek information that is privileged under the First Amendment. In response, Plaintiffs have argued that the information they seek is highly relevant to the underlying litigation, that Third Parties have failed to establish that disclosure of the information would have a chilling effect on Heartland's First Amendment associational rights, that Plaintiffs have shown a compelling need for the information, and that Plaintiffs have shown that the subpoenas are the least intrusive way of obtaining the information.

The Courts have recognized that there is a right to free association, which is implicated when an organization is compelled to disclose its list of members or donors, thereby causing a chilling effect on the organization. *See, e.g., NAACP v. State of Ala. ex rel. Patterson*, 357 U.S. 449, 463 (1958); *Matney v. County of Kenosha*, 86 F.3d 692, 699 (7th Cir. 1996); *Master Printers Ass'n, Div. of Printing Industry of Illinois v. Donovan*, 699 F.2d 370, 372 (7th Cir. 1983); *see also Anderson v. Hale*, 2001 WL 503045, at *3 (N.D. Ill. 2001)(stating that "[t]he First Amendment associational privilege emerges when a discovery request specifically asks for a list of a group's anonymous members, or requests any similar information that goes to the heart of an organization's associational activities, and such disclosure could

4

arguably infringe upon associational rights" or, in other words, "adversely affect the members' ability to pursue their collective effort to foster beliefs by either inducing them to withdraw from the organization or dissuading others from joining it").

To assert a First Amendment privilege "a concrete showing of infringement is unnecessary," and instead "the movant need only show that 'there is some probability that disclosure will lead to reprisal or harassment.'" *Id.* (quoting *Black Panther Party v. Smith,* 661 F.2d 1243, 1267-68 (D.C. Cir. 1981)). However, the First Amendment privilege is "not absolute," and "must yield if to enforce [it] would produce a miscarriage of justice." *Deitchman v. E.R. Squibb & Sons, Inc.*, 740 F.2d 556, 561 (7th Cir. 1984)(citations omitted). Thus, "the inquiring party's interest in seeking to vindicate his rights by conducting discovery is pitted against the affected party's interest in protecting himself from disclosure of privileged information" and the court determines "whose interest prevails . . . by carefully balancing the parties' interests under heightened scrutiny." *Anderson*, 2001 WL 503045, at *3 (indicating that the balancing test used in cases involving the government "equally applies to cases involving two private parties" and "with equal force whether the inquiring party is seeking wholesale disclosure of a membership list or more limited disclosure of the identity of specific members" of an organization).

In applying the heightened scrutiny balancing test, the court looks at the following three factors: (1) "the relevance of the information sought, [(2)] the need for that information, [and (3)] the extent of injury that disclosure may cause to

associational rights." *Id.* at *4 (citations omitted). The party seeking to overcome the First Amendment privilege "bears the burden of proving that the balance of [the] factors weighs in his favor," and therefore "must show that the information sought is so relevant that it goes to the 'heart of the matter,'" or, in other words "is crucial to the party's case" and that the party seeking the information has "exhaust[ed] all reasonable alternative sources of information by which [the information could be] obtain[ed] in a less chilling manner." *Id.* (citations omitted).

As to the issue of whether the notice of deposition issued to Bast should be quashed, the court applies a similar "'balancing test to determine whether the need of the party seeking disclosure outweighs the adverse effect such disclosure would have on the policies underlying the [claimed] privilege.'" *Deitchman v. E.R. Squibb & Sons, Inc.*, 740 F.2d 556, 559 (7th Cir. 1984)(quoting *Equal Employment Opportunity Commission v. University of Notre Dame du Lac,* 715 F.2d 331, 338 (7th Cir. 1983)). In other words, "the court must compare 'the hardship to the party [or person] against whom discovery is sought, if discovery is allowed, with the hardship to the party seeking discovery if discovery is denied.'" *Deitchman*, 740 F.2d at 559 (quoting *Marrese v. American Academy of Orthopaedic Surgeons*, 726 F.2d 1150, 1159 (7th Cir. 1984)(*en banc*), rev'd on other grounds, 470 U.S. 373 (1985)).

I.  Relevance of Information Sought

Plaintiffs argue that the information being sought is highly relevant to their

case because, in the event Syngenta presents certain research information published by Heartland to the jury in the underlying action, Plaintiffs contend that they will be unable to rebut such evidence at trial without the information Plaintiffs seek through subpoenas. Plaintiffs' argument is flawed for several reasons: (1) Plaintiffs at this juncture are merely speculating as to the evidence or type of evidence that might be presented by Syngenta in the underlying litigation; (2) Evidence has been presented that Heartland "has never conducted, authorized, sponsored, or supervised research" on the product in question (Mot. Ex A, Par. 6), and Plaintiffs have not presented evidence to the contrary in their response; (3) Plaintiffs have the ability to file appropriate motions to bar the introduction of any evidence if Syngenta has not complied with certain court rules; and (4) Plaintiffs have the ability to move the Court in the underlying action to introduce any evidence, expert or otherwise, as it relates to the merits of their case.

Since Plaintiffs' use of the information to be gleaned through their discovery requests is purely hypothetical and tangential, the requests clearly do not go to the heart of the matter in the underlying litigation. Further, as stated above, Heartland has indicated in its motion to quash that it "has never conducted, authorized, sponsored, or supervised research" on the product in question, but merely publishes information that is the product of research by others. (Mot. Ex. A, Par. 6). Neither Heartland nor Bast are parties in the underlying litigation. Based on the facts presented, Heartland does not make the product that is the subject of the litigation, Heartland is not the governmental agency that regulates the product in question, and

7

there are no conspiracy allegations between Syngenta and Heartland in the underlying action. If Plaintiffs believed that Heartland's actions were crucial to the merits of their case, Plaintiffs could have included Heartland as a defendant in the underlying action, in which case Heartland would have had the legal right to file appropriate motions, including a motion to dismiss. Plaintiffs did not do so. Plaintiffs' attempt at this juncture to make Third Parties de facto defendants is improper. There is a pronounced difference between the word "relevant" and the concept of "relevance to the merits of the litigation." For the purpose of the instant motion, based on the fact presented, Plaintiffs have not shown that the information sought from Third Parties is crucial to Plaintiffs' case or that it even relates to the merits of the case. Once again, this Court's ruling as to "relevance" is for the purpose of adjudicating Third Parties' motion to quash before this court, and issues relating to the presentation of any evidence in the underlying litigation, including expert opinions or rebuttals, are solely within the jurisdiction of the court in the underlying action. In addition to the above analysis, this court finds that the information sought from Third Parties by Plaintiffs, specifically in document request numbers 2 and 5, is overly broad and that the production of such information would impose an undue burden on Third Parties.

II. Need for the Information Sought

Plaintiffs argue that they have shown a compelling need for the information being sought and that the subpoenas are the least intrusive way of obtaining the

information. Plaintiffs contend that they are attempting to discover information from Third Parties through subpoenas because Syngenta has not responded to Plaintiffs' requests to produce the same information that Plaintiffs made in the underlying action pending in the United States District Court for the Southern District of Illinois. However, the court in the underlying action, as part of the discovery supervision process, is vested with the authority to decide whether the requested information, in the first instance, is discoverable from Syngenta, and if the requested information is found by that court to be discoverable, then rulings on discovery disputes are also within the exclusive jurisdiction of that court. Even if it is found that the information sought from Third Parties by Plaintiffs is relevant, by their own admissions, Plaintiffs have not shown that they have fully exhausted other reasonable sources of gaining the information sought in the subpoenas. In addition, not only has evidence been presented that Heartland does not make or do research regarding the product at issue, evidence has also been presented that any information Heartland has published on the product at issue has previously been given to Plaintiffs, and that Heartland has not written or published any other materials relating to the product since that date. (Mot. Ex. A, Par. 6-7). The record reflects that Plaintiffs' attempt to obtain the information from Third Parties' is not the least intrusive means of obtaining such information and borders on harassment. Therefore, this court finds that Plaintiffs have not shown a compelling need for the information being sought.

III. Injury to Associational Rights

Plaintiffs argue that Heartland has not established a First Amendment associational privilege claim, contending that Heartland has "simply claim[ed] that Heartland's credibility would be impugned and it would lose future donations." (Resp. 7). Plaintiffs also contend that Heartland's claims of harm are speculative. However, Heartland has not just simply claimed such harm, but has submitted an affidavit by Bast who, as President of Heartland since its foundation in 1984, indicates that past disclosure of information relating to Heartland's donors led to Heartland being "demonized by critics and some journalists by selective identification of [Heartland's] most unpopular donors and linkage of them to some of [Heartland's] most controversial work." (Mot. Ex. A, Par. 10). Bast also indicates that "[d]isclosure of donor information will . . . [hobble] the scope of [Heartland's] work." (Mot Ex. A, Par. 11). In addition, Bast states that because of such past experience, donors have been promised anonymity since 2004. (Mot. Ex. A, Par. 12). In addition, Bast, who is in the best position to know the effects of disclosure based on past experience and his position as Heartland's president since 1984, indicates that "Heartland would lose at least half of its current funding if Heartland is required to disclose donor identities." (Mot. Ex. A, Par. 13). Bast has presented sufficient evidence based on past experience relating to the harm Heartland would suffer if donor information is released. Therefore, this court finds that Third Parties have advanced a legitimate argument as to the chilling impact on Heartland if donor information is released.

10

Based on the specific facts presented in the instant motion, even if it is found that the information sought by Plaintiffs is relevant and Plaintiffs have demonstrated need for the information, Plaintiffs' expressed need for the requested information does not outweigh Heartland's constitutional rights. The requests in the subpoenas issued to Third Parties fall squarely within the First Amendment associational privilege. There is a vital interest in upholding the privilege of association and protecting donor confidentiality. It is the opinion of this court that when there is a constitutional right at stake, it cannot and should not be taken lightly. Even though the right may not be absolute, such a constitutional right cannot be trumped by fishing expeditions or untenable assertions that the information sought is highly relevant to the litigation. This court finds that Third Parties have established a First Amendment associational privilege claim.

This court concludes that the information sought by Plaintiffs through the issuance of subpoenas to Third Parties is not relevant to the merits of the underlying litigation, and that the issuance of the subpoenas to Third Parties is not a viable alternative to seeking the information from a party in the underlying action, is overly intrusive, and most importantly, infringes on the First Amendment rights of Third Parties with a chilling effect.

## **CONCLUSION**

Based on the foregoing analysis, the court grants Third Parties' motion to quash the subpoena and notice of deposition.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated: May 13, 2011